**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO.: 1:20-CV-25047-BB**

VICTOR ARIZA,

      Plaintiff,

v.

WALTERS & MASON RETAIL,
INC., d//b/a ALTAR'D STATE, a
foreign for-profit corporation,

      Defendant.

_____/

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant, WALTERS & MASON RETAIL, INC. ("Altar'd State" or "Defendant"), by and through its undersigned counsel and pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, moves the Court to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction. In support, Defendant states as follows:

## MEMORANDUM OF LAW

### I.    INTRODUCTION

Plaintiff filed suit under Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12181-12189 (the "ADA"), claiming in Count I that he visited Defendant's website located at https://www.altardstate.com (the "Website"), and attempted to use it, but was unable to do so because it "contains access barriers that prevent free and full use by visually disabled individuals using keyboards and available screen reader software."  ECF No. 1 at ¶ 21. Defendant moves to dismiss Count I of Plaintiff's two-count complaint because Plaintiff lacks standing to seek injunctive relief.  Indeed, Plaintiff does not allege he has ever visited any Altar'd State location at any time in the past, nor has he alleged a specific intent to visit any Altar'd State

location in the future.  Defendant further moves to dismiss Count I of the Complaint because it fails to establish a nexus between the purportedly inaccessible Website and a barrier at the physical place of public accommodation.

Finally, Defendant moves to dismiss Count II of Plaintiff's two-count complaint because it presents a novel and complex issue of state law that should be resolved at the state level. Specifically, Plaintiff asserts that Defendant's collection of Plaintiff's browsing history without Plaintiff's express consent constitutes trespass under Florida law.  This is an issue that has not yet been considered at the state court level in Florida.

## II.    RELEVANT FACTS

Plaintiff purports to bring Count I of this action for "declaratory and injunctive relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA")." to "prevent discrimination which includes equal access to internet website for services to order merchandise, and to secure information about Defendant's stores online" in connection with alleged accessibility barriers contained in Defendant's "website called https://altardstate.com . . . ."  ECF No. 1 at ¶¶ 1, 12.

Plaintiff alleges that he lives in Miami-Dade County, and is visually disabled.  *Id*. at ¶ 4. According to Plaintiff, "Defendant's Website contains access barriers that prevent free and full use by visually disabled individuals using keyboards and available screen reader software."  *Id*. at ¶ 21.  Plaintiff further alleges that the Website "does not meet the Web Content Accessibility Guidelines (WCAG 2.0) Level AA or higher of web accessibility."  *Id*. at ¶ 36.

The Complaint, however, fails to allege how the purported deficiencies in Defendant's Website in any way impede, or even affect Plaintiff's ability to access or enjoy the brick and mortar premises of Defendant's physical locations.  Significantly, Plaintiff has not alleged that he is a

customer of any of Defendant's physical stores; he has not alleged that he ever visited or patronized any of Defendant's physical locations; nor does he allege a concrete intention to visit or patronize one of Defendant's physical locations in the future.

Instead, all Plaintiff does is assert, in conclusory fashion, that there is a "nexus between Defendant's retail stores and the Website . . . ." *Id*. at ¶ 26. Plaintiff goes on to assert that "Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals who want the safety and privacy of purchasing Defendant's merchandise offered on the Website online from their homes." *Id*. at ¶ 37.

The Complaint contains no allegation that Plaintiff has any plans to actually patronize any Altar'd State location at any specific time in the future. Instead, it merely states that Plaintiff "intended to patronize" the Altar'd State store at 2352 East Sunrise Boulevard, Fort Lauderdale, Florida, *id*. at ¶¶ 7, 17, and describes a purported visit to the Website in October 2020. *See id*. at ¶ 20.[1]

## III. THIS COURT SHOULD DISMISS COUNT I OF PLAINTIFF'S COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION

This Court should dismiss Plaintiff's Complaint for lack of subject matter jurisdiction for the reasons explained below.

### A. Standard for Assessing Subject Matter Jurisdiction

"Under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of establishing that the court has jurisdiction." *Reyes v. Carnival Corp.,* No. 04-21861, 2005 U.S.

---

[1]     The referenced Altar'd State store is located approximately 15 miles north of the northern-most border of Miami Dade County, meaning that Plaintiff, who alleged he resides in Miami-Dade County but did not provided his address in the Complaint, can reside no closer than 15 miles away from the location at issue.

Dist. LEXIS 11948, at *3 (S.D. Fla. May 25, 2005) (citation omitted). "The Eleventh Circuit has stated that 'because a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case.'" *Id.* (*citing Smith v. GTE Corp.,* 236 F.3d 1292, 1299 (11th Cir. 2001)).

A motion to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(1) can either be a facial or factual attack. *Stalley ex rel. U.S. v. Orlando Regional Healthcare System, Inc.,* 524 F.3d 1229, 1232 (11th Cir. 2008); *Morrison v. Amway Corp.,* 323 F.3d 920, 924 n.5 (11th Cir. 2003). In a facial attack, the court assumes the allegations in the complaint to be true and determines whether the plaintiff has alleged a sufficient basis for subject matter jurisdiction.[2] *Plunkett v. Poyner,* No. 08-60953-CIV, 2009 U.S. Dist. LEXIS 118823 at *5-6 (S.D. Fla. Aug. 12, 2009). However, in factual attacks the existence of subject matter jurisdiction is being challenged in fact, regardless of the pleadings, and a district court may consider extrinsic evidence such as testimony and affidavits. *Makro Capital of Am., Inc. v. UBS AG,* 543 F.3d 1254, 1258 (11th Cir. 2008). Additionally, in factual attacks this Court is not bound to assume that the allegations in the

---

[2]     A facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6). *Kachkar v. Bank of Am. Corp. (In re Benkovitch),* 2017 Bankr. LEXIS 443, *8-9 (S.D. Fla. Feb. 8, 2017). The Court must accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). However, a court need not accept as true unwarranted factual inferences. *See Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708 (11th Cir. 2014) (holding that a plaintiff cannot rely on "naked assertions devoid of further factual enhancement," and must demonstrate "more than labels and conclusions."). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must include "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 and 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

complaint are true. *Id.*  Moreover, "in the face of a factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists." *OSI, Inc. v. U.S.,* 285 F.3d 947, 951 (11th Cir. 2002).  A factual attack on subject matter jurisdiction may be mounted at the motion to dismiss stage, at which point a plaintiff must actually prove "that standing exists by a preponderance of the evidence." *Norkunas v. Seahorse NB, LLC,* 720 F. Supp. 2d 1313, 1314 (M.D. Fla. 2010).  Here, Defendant mounts both a facial and factual attack on the Court's jurisdiction, as it asserts Plaintiff does not have standing to sue.

## B.   Plaintiff's Complaint Must Be Dismissed Because It Fails To Establish A Nexus Between The Purportedly Inaccessible Website and a Physical Place Of Public Accommodation

In his Complaint, Plaintiff never claims to have visited or patronized any of Defendant's physical locations.  Plaintiff merely claims that he attempted to access the Defendant's Website.  ECF No. 1 at ¶ 20.  Plaintiff claims that his inability to access the Website violates the ADA.  *Id.* at ¶ 15. Courts in this District have explained the reach of Title III of the Americans with Disability Act as it applies to websites, specifying that a nexus must exist between a physical place of public accommodation and a website.  *See, e.g.*, *Gomez v. Bang & Olufsen America, Inc.*, 2017 U.S. Dist. LEXIS 15457 (S.D.Fla. Feb. 2, 2017) (dismissing complaint without prejudice for failure to allege nexus between website and access to physical location of place of public accommodation; plaintiff must claim an actual (not hypothetical) impediment to use of physical retail location caused by the website); and *Gomez v. La Carreta Enterprises, Inc.*, Case. No. 17-61195-CIV-DIMITROULEAS (S.D.Fla. Dec. 7, 2017) (dismissing with prejudice for failure to link website to access to physical location of a place of public accommodation).  Notwithstanding this, in the present Complaint there is no nexus alleged linking the Website to barriers at Defendant's concrete physical locations.

Title III of the Americans with Disabilities Act ("ADA") prohibits discrimination against individuals with disabilities in a "***place of public accommodation***." 42 U.S.C. §12182(a) (emphasis added).  Plaintiff cites to no statute or regulation that supports his application of the requirements of Title III of the ADA to Defendant's Website here, wholly unmoored from a visit to a physical Altar'd State location.[3]

To state a claim for relief under Title III, a plaintiff must plausibly allege, first, that he is disabled within the meaning of the ADA; second, that the defendant is a private entity that owns, leases, or operates a place of public accommodation; and, third, that because of his disability the plaintiff was denied full and equal enjoyment of the public accommodation by the defendant.  *Gomez v. Bang & Olufsen America, Inc.*, No. 16-cv-23801, 2017 U.S. Dist. LEXIS 15457, at *4 (S.D. Fla. Feb 2, 2017); *see Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 151 (D.C. Cir. 2015) (*per curiam*); *Arizona ex rel. Goddard v. Harkins Amusement Enters., Inc.*, 603 F.3d 666, 674 (9th Cir. 2010); *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 151 (D.C. Cir. 2015) (*per curiam*); *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008) (*per curiam*).

Title III sets forth a "comprehensive definition of 'public accommodation,'" *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 667 (2001), in which a private entity is covered "if the operations of such entit[y] affect commerce" and the entity fits into one of the statute's 12 enumerated sets of categories. *See* 42 U.S.C. § 12181(7).  Websites are not an enumerated category.

The ADA delegates authority to the Attorney General to issue regulations to carry out the provisions of Title III. *See id.* § 12186(b).  However, rules concerning website accessibility have not been promulgated, and to date, neither the Supreme Court nor any of the Circuit Courts of

---

[3]   The Department of Justice ("DOJ") has not yet issued guidance on the application of Title III of the ADA to Websites.

Appeal have addressed the issue head on.  It should be noted, however, that the question of whether Title III even applies beyond physical spaces and into cyberspace requires that one "wad[e] into a thicket of a circuit split." *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1334 (11th Cir. 2004).  Decisions of the Third, Fifth, Sixth, and Ninth Circuits suggest that Title III's coverage is limited to physical spaces.  *See Ford v. Schering-Plough Corp.*, 145 F.3d 601, 613-14 (3d Cir. 1998); *Magee v. Coca-Cola Refreshments USA, Inc.*, 833 F.3d 530, 534-36 (5th Cir. 2016); *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1014 (6th Cir. 1997); *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114-15 (9th Cir. 2000).  By contrast, the First, Second, and Seventh Circuits have held that Title III does not always require a connection to a physical space.  *See Carparts Distribution Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12, 18-20 (1st Cir. 1994); *Pallozi v. Allstate Life Ins. Co.*, 198 F.3d 28, 31-33 (2d Cir. 1999); *Morgan v. Joint Admin. Bd.*, 268 F.3d 456, 459 (7th Cir. 2001).

The Eleventh Circuit has established a rule that is somewhere in the middle of these other Circuits.  In *Rendon v. Valleycrest Productions, Ltd.*, the Circuit Court of Appeals determined that a telephone selection process that allegedly screened out disabled contestants from competing on the show *Who Wants To Be a Millionaire?* was covered by Title III.  294 F.3d 1279 (11th Cir. 2002).  In reaching this conclusion, the Court reasoned that the ADA's plain text "reveals that the definition of discrimination provided in Title III covers both tangible barriers, that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, and intangible barriers, such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges." *Id.* at 1283 (citations omitted).  Even though *Rendon* concluded that Title III can extend to non-physical spaces, it does not establish that

a virtual space like a website is necessarily covered, especially when the claimed denial of equal access is altogether unmoored from a physical space.

> District courts within the Eleventh Circuit that have considered the question of whether websites are public accommodations have uniformly held that the ADA does not apply to a website that is wholly unconnected to a physical location.  However, district courts in the Eleventh Circuit have found that websites are subject to the ADA if a plaintiff can establish a nexus between the website and the physical premises of a public accommodation.

*Gil v. Winn Dixie Stores, Inc.*, 242 F. Supp. 3d 1315, 1320 (S.D. Fla. 2017) (citations omitted).  *See, e.g., Bang & Olufsen*, 2017 U.S. Dist. LEXIS 15457, at *12-13 ("[T]he ADA does not require places of public accommodations to create full-service websites for disabled persons.  In fact, the ADA does not require a place of public accommodation to have a website at all.  **All the ADA requires is that, if a retailer chooses to have a website, the website cannot impede a disabled person's full use and enjoyment of the brick-and-mortar [*sic*] store**."). (Emphasis added).

In *Access Now, Inc. v. Southwest Airlines Co.*, 227 F. Supp. 2d 1312 (S. D. Fla. 2002), the court addressed the question of "whether Title III of the ADA mandates that Internet website operators modify their sites so as to provide complete access to visually impaired individuals." *Id*. at 1315.  More specifically, the District Court in *Access Now* considered: "whether Southwest's website, southwest.com, is a place of public accommodation as defined by the ADA, and if so, whether Title III of the ADA requires [defendant] to make the goods and services available at its 'virtual ticket counters' accessible to visually impaired persons." *Id.*  The District Court noted that no court in the Eleventh Circuit has squarely addressed this issue. *Id.*

Like Plaintiff in the case before this Court, in *Access Now* the plaintiffs alleged that Southwest's technology violated the ADA because the goods and services offered on its website were inaccessible to blind persons using a screen reader and otherwise failed to allow access to

blind consumers.  *Id.* at 1316.  In analyzing "whether an Internet website ... is a 'place of public accommodation,'" the District Court determined that the issue was a question of statutory construction, requiring that the court apply the plain language of the statute.  *Id.* at 1317.  The court then noted that the ADA "specifically identifies twelve (12) particularized categories of 'places of public accommodation.'"  *Id.*  After setting forth the twelve enumerated categories, the *Access Now* Court held:

> Here, to fall within the scope of the ADA as presently drafted, a public accommodation must be a physical, concrete structure.  To expand the ADA to cover "virtual" spaces would be to create new rights without well-defined standards.  *Id.* at 1318.

The *Access Now* Court rejected the plaintiffs' argument that Southwest's website is a place of public accommodation and falls within the scope of Title III.  *Id.* at 1317, 1319.

The *Access Now* Court also rejected the plaintiffs' argument that the court should expand the ADA's application into cyberspace, as other Circuit Courts have done, finding that the Eleventh Circuit has not read Title III of the ADA as broadly as those other courts.  *Id.* at 1319.

As a result, the *Access Now* Court went on to find that, unlike the fast finger telephone selection process *used to select contestants* to participate in a television game show in a physical, concrete television studio *that tended to screen out* disabled individuals, the "public website at issue here is neither a physical, public accommodation itself as defined by the ADA, nor a means to accessing a concrete space such as the specific television studio in *Rendon*."  227 F. Supp. 2d at 1321.  Consequently, the *Access Now* Court ruled that the plaintiffs there "[were] unable to demonstrate that Southwest's website *impedes their access to a specific, physical, concrete space* such as a particular airline ticket counter or travel agency."  *Id.* at 1321 (emphasis added).  "Having failed to establish a nexus between southwest.com and a physical, concrete place of public

accommodation, Plaintiffs have failed to state a claim upon which relief can be granted under Title III of the ADA." *Id.*

Indeed, judges in this district have dismissed website accessibility lawsuits similar to the lawsuit before this Court, explaining that "while there is some disagreement amongst district courts on this question, it appears that the majority of courts agree that websites are not covered by the ADA unless some function on the website hinders the full use and enjoyment of a physical space." *Bang & Olufsen Am., Inc.,* 2017 U.S. Dist. LEXIS 15457, at \*8.  In that case, Plaintiff failed "to allege any facts that Bang and Olufsen's website impeded his own personal enjoyment of the goods and services **offered at its retail locations**." *Id.* at \*11 (emphasis added).  As a result "[plaintiff's] generalized grievances **are wholly unconnected to any harm he actually suffered at the place of public accommodation** (i.e. the concrete, physical store) **and are therefore insufficient to survive a motion to dismiss**." *Id*. (emphasis added).

Another case in this district that was also dismissed is particularly instructive.  In *Gomez v. Knife Mgmt, LLC*, the court dismissed Plaintiff's ADA website accessibility complaint for lack of standing.  Among the various reasons for dismissing the complaint, the court wrote that "nowhere does Plaintiff's Complaint allege that his access to the website was tied to his access of the restaurant." *Gomez v. Knife Mgmt, LLC*, No. 17-cv-23843, 2018 U.S. Dist. LEXIS 159178, at \*6, (S.D. Fla Sep. 14, 2018).  Accordingly, the court held that "even if Defendant's website is a public accommodation – a question that this Court does not reach – Plaintiff has not established standing to challenge it." *Id*.

In the case before this Court, Plaintiff does not – and cannot – allege that Defendant's Website impedes his access to a specific, physical, concrete space.  The Complaint fails to allege that Defendant's Website in any way selects customers or screens out disabled individuals as in

*Rendon*. There is no claim that, as a result of the alleged deficiencies with Defendant's Website, Plaintiff has in any way been denied access to any one of Defendant's physical, concrete locations or to any goods and services at those locations. There is no allegation that information in the Website concerning Defendant's locations and available products impacts the ability of Plaintiff to visit any of Defendant's physical, concrete locations, nor is there an allegation that Plaintiff was prevented from obtaining the information on the Website, or purchasing products, through other means such as by visiting Defendant's website, or visiting or telephoning any of the locations.

In sum, Defendant's Website is not a physical, concrete structure, as required to state a claim under Title III of the ADA. *Access Now*, 227 F. Supp. 2d at 1318. Moreover, there is no basis to expand the ADA's application to Defendant's Website because the required nexus, as articulated by the courts in this District, has not been alleged in the Complaint. Accordingly, Plaintiff's Complaint fails to state a claim for the violation of the ADA, and should be dismissed.

C. **Plaintiff Lacks Article III Standing to Bring His Claim for Injunctive Relief Against Defendant**

In order to bring an action for injunctive relief under Title III of the ADA, the Plaintiff must have standing to do so. Absent a demonstration of standing, Plaintiff cannot satisfy the "case or controversy" requirement of Article III of the Constitution. In order to establish standing, Plaintiff must have suffered an injury in fact, i.e., the invasion of a legally protected interest which is concrete and particularized and actual and imminent, not conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992). Moreover, there must be some causal connection between the asserted injury and the challenged action, and the injury must be of the type likely to be redressed by a favorable decision. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804, 86 L. Ed. 2d 628, 105 S. Ct. 2965 (1985).

"[B]ecause injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges . . . a real and immediate-as opposed to a merely conjectural or hypothetical-threat of future injury." *Wooden v. Board of Regents of University System of Georgia*, 247 F.3d 1262, 1284 (11th Cir. 2001).

Courts in the Eleventh Circuit addressing the issue of standing have consistently refused to grant injunctive relief absent evidence that the plaintiff <u>actually</u> <u>suffered</u> – <u>and</u>  <u>will</u> <u>again</u> <u>suffer</u> – discrimination in violation of Title III.  (*Emphasis added*.)  *Access Now, supra,* (citing *Shotz, supra*, at 1081; *Association for Disabled Americans v. City of Orlando*, 153 F. Supp. 2d 1310, 1322 (M.D. Fla. 2001); *Resnick v. Magical Cruise Co.*, 148 F. Supp. 2d 1298, 1301 (M.D. Fla. 2001)).

As explained by the Court in *Gutherman v. 7-Eleven, Inc.*, "[i]n order to demonstrate standing, a plaintiff must <u>either</u> live in close proximity to the defendant's facilities, <u>or</u> must demonstrate that he or she has visited the facility and/or is likely to visit in the near future." (*Emphasis added*.) 278 F. Supp. 2d 1374, 1378 (S.D. Fla. 2003) (citing *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001).  Therefore, a history of past visits and continued residency in the area are sufficient to support a plaintiff's contention that she would likely patronize the defendant's facility in the future.  *See Houston v. Marod Supermarkets, Inc.,* 733 F.3d 1323, 1328–29 (11th Cir. 2013) (discussing proximity test as it relates to standing under Title III); *Connors v. West Orange Healthcare Dist.*, 2005 U.S. Dist. LEXIS 47223 (M.D. Fla. Aug. 15, 2005) (citing *Access Now, Inc. v. S. Fla. Stadium Corp.*, 161 F. Supp. 2d 1357, 1365 (S.D. Fla. 2001)).  However, injury in the past alone does not support a finding of an Article III case or controversy when the only relief sought is an injunction.  *Houston, supra; Shotz*, *supra,* at 1082 (citing *Malowney v. Federal Collection Deposit Group*, 193 F.3d 1342, 1348 (11th Cir. 1999)).

Plaintiff did not plead that he lived in close proximity to any of Defendant's physical locations as required by *Houston*, *Shotz*, and *Gutherman*.  In fact, Plaintiff only pleads that he lives in Miami-Dade County, Florida, ECF No. 1 at ¶ 4.  Because of the massive area encompassed by the allegation that he lives in Miami Dade County (which has a total area in excess of 2,000 square miles[4]), and because the store at issue is at least 15 miles away from any point in Miami Dade County, the pleading is devoid of any allegation that Plaintiff lives close enough to the Fort Lauderdale location such that it would be plausible for Plaintiff to allege a likelihood of future visits where he might suffer future harm.

Further, Plaintiff did not allege that he ever visited any of Defendant's locations, nor did he allege that he has a history of patronizing any of the Defendant's retail locations.  Plaintiff has not identified any relationship with this particular Defendant to plausibly suggest he would patronize any of Defendant's stores had he been able to obtain information from the Website.

Accordingly, Plaintiff could not have been subjected to discrimination at one of Defendant's brick and mortar stores, or have a real plan to do so in the future, since he never visited any of Defendant's physical brick and mortar locations.

Not only did Plaintiff fail to plead that he has visited any of Defendant's locations in the past, but he also did not plead that he has any actual, concrete plan to visit any of Defendant's physical locations in the future.  Instead, he only pleads that he "is interested in patronizing, and intends to patronize in the near future . . . Defendant's physical stores" at some undetermined future date.  ECF No. 1 at ¶ 17.  Plaintiff's allegations do not meet the requirements as set out in *Connors*.  Just last year, a court in the Southern District of Florida dismissed with prejudice another

---

[4]    About    Miami    Dade    County,    (December    28,    2020), https://www.miamidade.gov/global/disclaimer/about-miami-dade-county.page

Title III lawsuit for lack of standing because of the absence of definitive language alleging a concrete plan to patronize the defendant's business in the future.  Specifically, in *Johnson v. Speedway LLC,* No. 0:18-cv-62972, 2019 U.S. Dist. LEXIS 72741 (S.D. Fla. Apr. 29, 2019), the Plaintiff alleged past patronage, but, as to future harm, alleged only that "he 'has a concrete plan to patronize Defendant's Speedway 6456 gas station when he is treated like other members of the public.'"  *Id.* at *6.  The court held this was not enough to meet the standing requirement, explaining that it was "not convinced that this conditional language ('when he is treated like other members of the public') satisfies the definiteness of return required by *Lujan* and progeny."  *Id.* (*citing Kennedy v. Beachside Commer. Props.,* LLC, 731 Fed. Appx. 817, 822 (11th Cir. 2018) ("[The plaintiff's] vague intent to return to shop and monitor the premises cannot pass constitutional muster.  Unlike the plaintiff in *Houston* who lived only thirty miles away and had both definitive plans and sound reason to revisit the area, Plaintiff uses overly-broad and vague language as a 'catch-all' to hope that his claim will stick.  While neither our court nor the Supreme Court require detailed or concrete travel plans to revisit a place to meet standing requirements, case law requires more immediacy than a 'someday' plan.")).  In the case at bar, Plaintiff fails to allege even a "someday" plan.

Finally, even if we assume the subject Website somehow violates the ADA, Plaintiff did not explain how he suffered <u>concrete harm</u> from that violation (as now mandated by the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016)) since the same information he wishes to obtain through the Website can just as easily be obtained by directly calling any of Defendant's stores.[5]  If, as in this case, there are readily accessible alternative

---

[5]   Defendant asserts the Court can take judicial notice of the fact that simply putting Defendant's name into Google will bring up a contact number for each of its stores (i.e. doing so requires no visit to Defendant's website), which Plaintiff can use to obtain any information he

options, such as telephoning any of the locations to obtain information, or visiting any of the

locations, and Plaintiff does not allege he unsuccessfully tried to avail himself of any of them, the

Plaintiff does not meet the injury in fact requisite for standing.  *Norkus v. Seahorse NB, LLC,* 444

Fed.Appx. 412, 416 (11th Cir. 2011).

## IV.   THIS COURT SHOULD DISMISS COUNT II OF PLAINTIFF'S COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION

### A.   Legal Standard

Federal courts are courts of limited jurisdiction. *See, e.g., S. Florida Equitable Fund, LLC*

*v. City of Miami, Fla*., 770 F. Supp. 2d 1269, 1277 (S.D. Fla. 2011).  As courts of limited

jurisdiction, federal courts may only exercise jurisdiction pursuant to the Article III of the United

States Constitution or statutory grant of authority to adjudicate the asserted claim.  *Office of Thrift*

*Supervision v. Paul*, 985 F. Supp. 1465, 1470 (S.D. Fla. 1997).  Under 28 U.S.C. § 1331, this Court

has jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United

States."

Section 1367 of Title 28 of the United States Code provides the district courts with

supplemental jurisdiction over "all other claims that are so related to claims in the action within

such original jurisdiction that they form part of the same case or controversy under Article III of

the United States Constitution."  28 U.S.C. § 1367(a).  However, § 1367(c) states that district

courts may decline to exercise supplemental jurisdiction over state law claims, if, inter alia, "the

claim raises a novel or complex issue of State law." 28 U.S.C. § 1367(c).

### B.   The Court Should Decline to Exercise Supplemental Jurisdiction over Plaintiff's State Law Trespass Claim

---

purportedly needs from the Website. The primary reason other patrons might visit the Website
specifically (to see pictures of products), are, unfortunately, not applicable to visually impaired
persons (through no fault of Defendant) and no screen reader can rectify this issue.

The question of whether Defendant's collection of Plaintiff's browsing history without Plaintiff's express consent constitutes trespass under Florida law is a novel and complex issue of state law with potentially wide-reaching ramifications for internet service providers and website owners in Florida. *See, e.g., Fuller v. MP & LP Holdings, LLC*, No, 0:19-cv-60673-UU, 2019 U.S. Dist. LEXIS 44206 at *2 (S.D. Fla. Mar. 15, 2019). No Florida case has addressed whether the use of cookies and collection of browsing history constitutes trespass under Florida Law. *Id*. As this claim is complex, comity counsels that the Florida courts should resolve this issue. *See Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997) ("[s]tate courts, not federal courts, should be the final arbiters of state law." (*citing Hardy v. Birmingham Bd. of Educ*., 954 F.2d 1546, 1553 (11th Cir.1992))).

Several ADA Plaintiffs have filed numerous cases in the Southern District of Florida asserting website accessibility violations pursuant to Title III of the ADA, and adding a trespass count substantially similar to the case at bar. At least one court has declined to accept supplemental jurisdiction on the trespass issue, and has repeatedly dismissed the trespass count. *See, e.g., Fuller v. MP & LP Holdings, LLC*, No, 0:19-cv-60673-UU, 2019 U.S. Dist. LEXIS 44206 (S.D. Fla. Mar. 15, 2019); *Moncada v. VF Outdoor*, LLC, No. 0:19-cv-60333-UU, 2019 U.S. Dist. LEXIS 21839 (S.D. Fla. Feb. 08, 2019); *Hernandez v. Hallmark Retail, Inc.*, No. 1:18-cv-23793-UU, 2018 U.S. Dist. LEXIS 16018 (S.D. Fla. Sep. 17, 2018); *Espinoza v. Lululemon USA, Inc.*, No. 1:18-cv-21941-UU, 2018 U.S. Dist. LEXIS 84058 (S.D. Fla. May 16, 2018).

Accordingly, this Court should decline to exercise jurisdiction over Plaintiff's common law trespass claim pursuant to 28 U.S.C. § 1367(c), and dismiss Count II of Plaintiff's Complaint. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966)

("Needless decisions of state law should be avoided both as matter of comity and to promote justice between the parties, by procuring them a surer-footed reading of applicable law.").

## V.        **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that this Court dismiss both counts of the Complaint, and grant any other and further relief it deems just.

Respectfully submitted,

/s/ Edwin Cruz
Edwin Cruz, Esq.
Florida Bar No. 55579
E-mail: *edwin.cruz@jacksonlewis.com*
JACKSON LEWIS P.C.
One Biscayne Tower, Suite 3500
Two South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 577-7604
*Attorney for Defendants*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 4, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of Notice of Electronic Filing generated by CM/ECF.

s/ Edwin Cruz
Edwin Cruz, Esq.

CASE NO.: 1:20-CV-25047-BB

**SERVICE LIST**

**United States District Court for the Southern District of Florida**
*Victor Ariza v. Walter & Mason Retail, Inc.*
**CASE NO.: 1:20-CV-25047-BB**

Roderick V. Hannah, Esq.
Florida Bar No. 435384
E-mail: *rhannah@rhannahlaw.com*
RODERICK V. HANNAH, ESQ., P.A.
8751 W. Broward Blvd., Suite 303
Plantation, FL 33324
Telephone: (954) 362-3800
*Counsel for Plaintiff*

Pelayo M. Duran, Esq.
Florida Bar No. 0146595
E-mail: *duranandassociates@gmail.com*
LAW OFFICE OF PELAYO M. DURAN, P.A.
4640 N.W. 7 Street
Miami, FL 33126
Telephone: (305) 266-9780
*Co-Counsel for Plaintiff*

Edwin Cruz, Esq.
Florida Bar No. 55579
E-Mail: *edwin.cruz@jacksonlewis.com*
JACKSON LEWIS P.C.
One Biscayne Tower, Suite 3500
Two South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 577-7604
Facsimile: (305) 373-4466
*Counsel for Defendant*